RAFAEL RIVERA-ROCHIG, Plaintiff and Appellant, *v.* MANU-FACTURERS LIFE INSURANCE COMPANY, Defendant and Appellee.

No. 3403. Argued February 3, 1925.—Decided May 8, 1925.

1. CONTRACT—INSURANCE—INTIMIDATION.—It is intimidation when a person is threatened with an injury that is unjust.
2. ID.—ID.—RENUNCIATION OF RIGHTS—CONSIDERATION—RATIFICATION.—Cashing a check given in consideration of the cancellation of an insurance policy on renunciation of rights thereunder after taking the advice of an attorney is a ratification of the renunciation.

District Court of Ponce, R. Díaz Cintrón, J. Judgment for the defendant in an action on an insurance policy. *Affirmed.*
*Eduardo Flores Colón* for the appellant. *Daniel F. Kelley* and *Alberto S. Poventud* for the appellee.

MR. JUSTICE ALDREY delivered the opinion of the court.

On June 9, 1923, Julio F. Rivera Rochig applied for life insurance in The Manufacturers Life Insurance Co. and on July 9, 1923, a policy was issued to him for the sum of $18,000. On October 30th of the same year the insured died after having directed that the amount of the policy be paid to his brother, Rafael Rivera Rochig, who on the 12th of the following month signed a document releasing the insurance company from all liability under the said policy and surrendered the policy to the company in consideration of payment to him by the company of the premium of $560.60 paid on the policy. He stated in the document that he made the compromise of his own free will because he believed that his brother, Julio F. Rivera, was not in good health when he applied for the insurance and that the insurance company would be justified in refusing to pay the amount of the policy. The $560.60 was paid to Rafael Rivera Rochig by a check which he cashed two days later.

A few days thereafter Rafael Rivera Rochig sued The Manufacturers Life Insurance Company for the full amount of his brother's insurance, alleging that his surrender of the policy to the insurance company was obtained by an agent of the company by means of deceit, false accusations and threats of criminal prosecution, claiming that the policy was void; wherefore, and because of the sorrow that would be caused by the exhumation of his brother's body, he was forced to surrender the policy.

The defendant opposed the action and after trial judgment was rendered dismissing the complaint, from which the plaintiff appealed.

Although evidence was introduced at the trial as to whether Julio F. Rivera Rochig was in good health or had pulmonary tuberculosis when he applied for the policy and showing also that a short time before the insured was earning $7 a week and a month before had taken out another insurance policy for $15,000, that evidence need not be considered, inasmuch as the fundamental question in this case is whether the surrender by the appellant of his rights under the policy was obtained by intimidation on the part of the agents of the company.

On this point the plaintiff's evidence consisted of his own testimony, that of his brother Ramón Rivera and of the latter's wife, Hipólita Bigas. The plaintiff, who is 27 years of age and the owner of a watch-repairer's shop, testified that on November 11, 1923, Angel M. Mayoral, brother-in-law of the wife of Ramón Rivera and agent of the defendant company, came to his house and in the presence of his said brother and their mother asked him to deliver the policy to him, saying that it would have to be canceled or they would all go to jail and the body of his brother Julio would be disinterred; that on the following day Mayoral came again to his house accompanied by an American and by Mr. Font and they repeated what Mayoral had said before, saying that the transaction was un-

lawful, and compelled him to sign a paper renouncing his rights under the policy, but he did not take the trouble to read it; that on the same day he went to the Meliá Hotel at noon and asked to be shown the paper that he had signed and they permitted him to read it and handed him a check for the premium paid; that on the following day he went to his attorney for advice; that on the 14th the check was cashed, and that he had no reason to fear anybody. Ramón Rivera and Hipólita Bigas testified that they were getting out of bed on Sunday morning when Mayoral arrived with Mr. Font and an American named Young and from their room they heard an excited discussion in which they demanded from Rafael Rivera the surrender of the policy, saying that his brother Julio was sick when he was insured and that they would exhume his body and put them all in jail, in view of which their brother Rafael delivered the policy and signed a document without knowing what it contained.

For the defendant Angel M. Mayoral testified that on a Sunday afternoon he went to the house of Rafael Rivera in connection with the policy in question and explained to him the attitude of the company concerning the risk, it having ascertained that the health of the deceased Julio was not very good and that certain facts had been concealed with regard to the real condition of his health, so that the company had the right to cancel the policy, whereupon Rafael Rivera handed the policy to him for cancellation, the witness offering to return the premium on the following day; that on that afternoon nobody accompanied him; that at night he took the policy to Mr. Young, who is an agent of the company, and the next morning went with him to the house of Rafael Rivera after having typewritten the cancellation of the policy on its back; that this was read to Rafael Rivera and the witness told him that he would answer for the return of the premium and he (Rivera) could go to the Meliá hotel for the check at noon; that Eliseo

Font, manager of the company, never went with the witness to the house of Rafael Rivera; that the witness never threatened the plaintiff; that he mentioned the exhumation of Julio's body as one of the things the company could do to prove the poor condition of his health; that during his visit with Mr. Young they merely read to Rivera what had been written on the policy and told him to go to the Meliá hotel for the check. William Edwin Young is an agent of the defendant and he testified that he went with Mayoral to the house of Rafael Rivera; that there was no argument, intimidation or threat, for the only thing that occurred there was that he or Mayoral showed the policy that had been in their possession since the night before and Mayoral explained the matter to Rivera in a few words, and he seemed to acquiesce entirely, and without objection he signed the document after it had been read to him by Mayoral; that Font was not present and this was the reason why they could not then give the check to Rivera, but they gave it to him at the Meliá hotel after Rafael Rivera had read the surrender of the policy and said that he had no objection. Eliseo Font testified that he had never been in the house of Rafael Rivera.

Although in view of the fact that the evidence introduced by the parties was contradictory on many points, among them as to whether Font was present when the cancellation of the policy was signed; whether the cancellation was read before being signed; whether the alleged threats were actually made to the plaintiff and in what words; and although in view also of the fact that considering the judgment rendered we might conclude that the court below gave credit to the evidence of the defendant and, therefore, believed that Mayoral said nothing to the appellant which might be considered as an intimidation for obtaining the policy for its cancellation, and that for all of these reasons the judgment should be affirmed without further consideration, yet we prefer to base our decision on

whether the words which the plaintiff claims were said by Mayoral, the agent of the defendant, constitute intimidation and make void the consent given by the plaintiff.

[1] Section 1232 of the Civil Code provides that consent given by error, under violence, by intimidation or deceit shall be void and section 1234 prescribes that intimidation exists when one of the contracting parties is inspired with a reasonable and well-grounded fear of suffering an imminent and serious injury to his person or property, or to the person or property of the spouse, descendants, or ascendants, and that in order to classify the intimidation, the age, sex, and status of the person must be considered. In commenting on these sections Manresa, in vol. 8, p. 618, ed. 1901, expresses himself as follows: "It is essential also that an injury be threatened. At this word we stop without going on to consider the adjectives that follow it, because the legislators did not consider as an injury that which the law itself protects or imposes and from this it follows as an important deduction that the injury must be unjust and that there is no intimidation when a person invokes his rights without going beyond them."

[2] We agree with this construction of the law, and in accordance with it and considering also the sex, age and capacity of the plaintiff, it follows that even if Mayoral said to the plaintiff, as the latter testified, that it was necessary to cancel the policy, for otherwise they would all go to jail and the body of his brother would be exhumed because the transaction had been unlawful, such words do not constitute intimidation since they only suggested what the defendant might do in attempting to show, as it had a right to do, that the policy was not legal, and therefore the threatened injury was not unjust. Besides, the cashing of the check given in consideration of the cancellation two days after it was given and after the plaintiff had secured the advice of an attorney is a ratification of the surrender.

For the foregoing reasons the judgment appealed from must be affirmed.